UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

------------------------------------------------------------------X
MATTHEW TYLER MITCHELL,

                      *Plaintiff*,

— against —

STARBUCKS CORPORATION d/b/a STARBUCKS
COFFEE COMPANY,

                      *Defendants.*
------------------------------------------------------------------X

Case No.

**COMPLAINT**

JURY TRIAL DEMANDED

Plaintiff Matthew Tyler Mitchell ("Mitchell" or "Plaintiff"), by his attorneys, Tacopina, Seigel & DeOreo, complaining of the defendant, Starbucks Corporation d/b/a Starbucks Coffee Company ("Starbucks" or "Defendant"), alleges as follows:

### INTRODUCTION

1. Starbucks boasts on its website that its "aspiration is to be people positive – investing in humanity and the well-being of everyone [it] connect[s] with, from [its] partners to coffee farmers to the customers in [its] stores and beyond." The recent horrible experience of Mitchell, a previous customer of Starbucks, firmly establishes that Starbucks has grossly fallen short of meeting such aspiration.

2. In short, Starbucks, rather than serving Mitchell the coffee for which he ordered, instead poisoned him with a toxic chemical, Urnex Urn & Brewer Cleaner ("Urnex"), on August 30, 2021, in Greenwich, Connecticut (Store # 806)("Store 806 "), which caused him to suffer physical injuries and severe emotional distress.

3. To make matters worse, Starbucks was on actual prior notice that Urnex was being served to its customers by its employees, which caused serious injuries and led to lawsuits, but clearly did nothing to stop it because such toxin was also served to Mitchell.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because Mitchell is a citizen of a different State than Starbucks and the amount in controversy exceeds $75,000.

5. Venue is appropriate pursuant to 28 U.S.C. 1391(b) because a substantial part of the events giving rise to the claims alleged herein occurred within this judicial district.

## PARTIES

6. Mitchell was and is an individual residing in Fairfield County, Connecticut. Therefore, for diversity purposes, Mitchell is a citizen of Connecticut.

7. Starbucks was and is a corporation incorporated under the laws of the State of Washington and has its principal place of business in the State of Washington. Therefore, for diversity purposes, Starbucks is deemed a citizen of the State of Washington.

## ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

8. On August 30, 2021, Mitchell ordered from Starbucks Store 806, through a work associate, a hot, black coffee and was later handed a coffee cup with a lid, which felt from the outside of the cup, to be full of hot coffee.

9. However, after Mitchell took a gulp of the purported "coffee," which he swallowed, he realized that he had just ingested a then unknown toxic substance.

10. Significantly, that substance immediately caused a caustic, burning sensation in his mouth, throat and stomach.

11. Mitchell then became incredibly ill and was coughing so incessantly that he had problems breathing.

12. After opening the lid, to his sheer horror, Mitchell saw a blue chemical solution. And, to aggravate matters, Mitchell then suffered severe dizziness and nausea.

13. Thereafter, Mitchell alerted the store manager of his ordeal, who admitted to Mitchell that it resulted from a "new employee" not realizing that the coffee brewer was filled with a chemical cleaning solution.

14. Accordingly, Mitchell promptly notified and complained to Starbucks about him being poisoned.

15. Starbucks soon identified the chemical at issue as Urnex Urn & Brewer Cleaner ("Urnex"), which is meant to breakdown and dissolve coffee residue within the metal interior of brewing machines – *not be consumed by customers*.

16. Notably, the well-known hazzards associated with that poison include serious gastrointestinal and related damage.

17. Despite the dangers posed by Urnex, which was regularly used at Starbucks and had poisoned customers in the past, the manager admitted that the only warning to employees that a brewer contained such toxin was an empty and upside-down cup placed upon it ("Upside-Down Cup Method").

18. In other words, rather than implementing a reliably safe system that mechanically prevented its coffee brewers from dispensing poison to unwitting paying customers, Starbucks

simply put its trust in the transitory placement of upside-down cardboard cups.

19. If such a system sounds nonsensical, that is because it is. Thus, the only plausible incentive for its use by Starbucks is simple greed. While the use of a cardboard cup is undoubtedly less costly than a mechanized safety protocol, public policy would clearly demand that its health should not give way to corporate penny-pinching.

20. Starbucks is the world's largest coffeehouse chain, with over thirty thousand stores across the globe. In simplest terms, it is unconscionable that a major company such as Starbucks, with extraordinarily vast resources, did not have a better warning system than an upside-down cardboard cup.

21. Moreover, in this instance, that already deficient system was further compromised by the fact Store 806's "new employee" was obviously not properly trained.

22. Starbucks's misconduct here is especially egregious and reckless, because it was on actual prior notice that its employees had previously poisoned its customers with Urnex. First, upon information and belief, in July of 2012, a Starbucks employee poisoned Cheryl Kingery ("Kingery") with Urnex at a store in Utah, which lead to serious injuries. Similarly, in July of 2015, Starbucks poisoned Danny Watts ("Watts") with Urnex, also causing serious injuries. Both Kingery and Watts filed lawsuits against Starbucks for such poisonings.

23. In response to the poisoning of Kingery, Laurel Harper, a Starbucks spokeswoman, said "The safety of our customers is our highest priority. *** We take this obligation seriously and are investigating Ms. Kingery's claims." Obviously, Starbucks did not make the safety of customers its highest priority, because it recklessly relied upon the Upside-Down Cup Method to cut costs.

24. Therefore, due to it being on prior actual notice of Urnex poisonings at its stores

4

(causing serious injuries) and merely using the Upside-Down Cup Method to save money, Starbucks's misconduct was highly unreasonable and involved an extreme departure from ordinary care, in a situation where a high degree of danger was apparent.

25. After the poisoning, Mitchell soon received medical treatment for his physical and emotional injuries. In particular, Starbucks' poisoning of Mitchell has caused him to suffer from severe gastrointestinal anguish, nausea, diarrhea, pain to his tongue and mouth, and a lingering chalk taste.

26. This terrifying incident also triggered and greatly worsened his previously diagnosed PTSD, depression and anxiety, which led to heightened emotional trauma and distress.

27. In fact, the torment that Starbucks inflicted upon Mitchell caused him many sleepless nights, spurred on by debilitating anxiety and depression.

28. In a fragile state, Mitchell, having undergone such a traumatic event, lingered awake at night in dread, as he feared the oncoming of long-lasting harm.

29. For that matter, Mitchell still harbors tremendous alarm that he may suffer some prospective injury in the wake of being poisoned.

30. Importantly, the foregoing is objectively corroborated by the fact Mitchell, following his injuries at the hands of Starbucks, required a significant increase in anti-depression and anti-anxiety medication.

## AS AND FOR A FIRST CLAIM
## RECKLESSNESS

31. Plaintiff repeats and realleges the Paragraphs above as if fully set forth herein.

32. At all material times, Plaintiff was a lawful business invitee of Store 806.

33. At all times material hereto Defendant's employees, agents and/or servants were acting in the course, scope and authority of their employment for Defendants.

34. Defendant has control over the business, including the work of the employees at Store 806.

35. Defendant profits from such employees' services.

36. At all times pertinent hereto, Starbucks had a duty to exercise reasonable care in the preparation and delivery of the beverage served to Plaintiff.

37. Employees of Defendant recklessly served a coffee cup containing a cleaning solution, Urnex, to Plaintiff.

38. Defendant thus breached its duty by serving Plaintiff Urnex in a cup.

39. As a result of the breach of duty, Plaintiff suffered injuries as described above, and has been damaged in far excess of $75,000.00.

40. Plaintiff has suffered and continues to suffer special damages, including but not limited to medical expenses.

41. Starbucks misconduct was also wanton because it was aware that its Upside-Down Cup Method would naturally and probably result in injury to another (as it was on prior notice of Urnex poisoning at its stores that caused serious injuries), intentionally disregarded a known duty to Mitchell to prevent such poisoning, and acted with the absence of care for the life, person, or

property of Mitchell, and with a conscious indifference to the consequences of using the Upside-Down Cup Method.

42. Due to Starbucks's reckless indifference to the rights of others (including Mitchell) and its wanton violation of those rights, Plaintiff is entitled to an award of punitive damages to be determined at trial, but in far excess of $75,000.00.

## AS AND FOR A SECOND CLAIM
## RECKLESS SUPERVISION AND TRAINING

43. Plaintiff repeats and realleges the Paragraphs above as if fully set forth herein.

44. Starbucks owed Mitchell a duty to properly supervise and train its employees to prevent foreseeable injuries to him.

45. Defendant was reckless in supervising and training its employees.

46. Starbucks's employees should have been supervised and trained on the dangerous condition when using cleaning chemicals, including Urnex, and failed to take adequate steps to prevent injury to Mitchell.

47. This is especially so when Starbucks was on actual notice of other Starbucks employees poisoning customers with Urnex, which caused serious injuries.

48. As detailed above, Starbucks's Upside-Down Cup Method was recklessly dangerous.

49. Starbucks breached its duty to properly train and supervise its employees to prevent foreseeable injuries.

50. As a result of the breach of duty, Plaintiff suffered injuries as described above, and has been damaged in far excess of $75,000.00.

51. Plaintiff has suffered and continues to suffer special damages, including but not limited to medical expenses.

52. Starbucks misconduct was also wanton because it was aware that its Upside-Down Cup Method would naturally and probably result in injury to another (as it was on prior notice of Urnex poisoning at its stores that caused serious injuries), intentionally disregarded a known duty to Mitchell to prevent such poisoning, and acted with the absence of care for the life, person, or property of Mitchell, and with a conscious indifference to the consequences of using the Upside-Down Cup Method.

53. Due to Starbucks's reckless indifference to the rights of others (including Mitchell) and its wanton violation of those rights, Plaintiff is entitled to an award of punitive damages to be determined at trial, but in far excess of $75,000.00.

## AS AND FOR A THIRD CLAIM
## CONNECTICUT UNFAIR TRADE PRACTICES ACT
## GENERAL STATUTES SEC. 42-110B ET SEQ. (CUTPA)

54. Plaintiff repeats and realleges the Paragraphs above as if fully set forth herein.

55. Having been on prior actual notice of its employees previously poisoning customers with Urnex, which caused serious injuries, Starbucks's Upside-Down Cup Method was unlawful (including but not limited to a violation of Connecticut Public Health Code Regulations 19-13-B42(n)[1] and (o)(4)[2]), and violated Connecticut's public policy and common law.

56. Starbucks's handing Mitchell heated Urnex in a cup with a top that was only supposed to be used for coffee and other safe beverages (not chemicals), was incredibly unfair and recklessly deceptive, and caused its customer (Mitchell) to suffer substantial injuries and financial loss.

57. Starbucks had an affirmative duty to warn Mitchell about the Urnex, but utterly failed to do so and recklessly omitted such facts from him. This was clearly a reckless omission of material facts.

58. Starbucks misconduct was far greater than a mere mistake or accident. As described above, the Upside-Down Cup Method was recklessly dangerous.

---

[1] "All food and drink in food service establishments shall be from sources approved or considered satisfactory by the director of health, based on a determination of conformity with principles, practices, and generally recognized standards that protect public health; shall be in compliance with applicable state and local laws and regulations; shall be transported and delivered at required temperatures; and shall be clean, wholesome, free from spoilage, free from adulteration and misbranding and safe for human consumption." Conn. Agencies Regs. § 19-13-B42(n)

[2] "Poisonous and toxic materials shall be identified and shall be stored and used only in such manner and under such conditions as will not contaminate food and drink or constitute a hazard to employees or customers." Conn. Agencies Regs. § 19-13-B42(o)(4).

59. Accordingly, Starbucks misconduct here was immoral, unethical, and unscrupulous.

60. Starbucks misconduct was also wanton because it was aware that its Upside-Down Cup Method would naturally and probably result in injury to another (as it was on prior notice of Urnex poisoning at its stores that caused serious injuries), intentionally disregarded a known duty to Mitchell to prevent such poisoning, and acted with the absence of care for the life, person, or property of Mitchell, and with a conscious indifference to the consequences of using the Upside-Down Cup Method.

61. As a result of the Starbucks statutory violation, Plaintiff suffered injuries as described above, and has been damaged in far excess of $75,000.00.

62. Plaintiff has suffered and continues to suffer special damages, including but not limited to medical expenses.

63. Due to such violation of CUTPA, Plaintiff is entitled to attorneys' fees pursuant to Conn. Gen. Stat. § 42-110g(d).

64. Due to Starbucks's reckless indifference to the rights of others (including Mitchell) and its wanton violation of those rights, Plaintiff is entitled to an award of punitive damages to be determined at trial, but in far excess of $75,000.00.

## AS AND FOR A FOURTH CLAIM
## NEGLIGENCE
## (PLED IN THE ALTERNATIVE)

65. Plaintiff repeats and realleges the Paragraphs above as if fully set forth herein, except as to any allegation that Starbucks's conduct was reckless.

66. At all material times, Plaintiff was a lawful business invitee of Store 806.

67. At all times material hereto, Defendant's employees, agents and/or servants were acting in the course, scope and authority of their employment for Defendants.

68. Defendant has control over the business, including the work of the employees at Store 806.

69. Defendant profits from such employees' services.

70. At all times pertinent hereto, Starbucks had a duty to exercise reasonable care in the preparation and delivery of the beverage served to Plaintiff.

71. Employees of Defendant negligently served a coffee cup containing a cleaning solution, Urnex, to Plaintiff.

72. Defendant thus breached its duty by serving Plaintiff Urnex in a cup.

73. As a result of the breach of duty, Plaintiff suffered injuries as described above, and has been damaged in far excess of $75,000.00.

74. Plaintiff has suffered and continues to suffer special damages, including but not limited to medical expenses.

## AS AND FOR A FIFTH CLAIM
## NEGLIGENT SUPERVISION AND TRAINING
## (PLED IN THE ALTERNATIVE)

75. Plaintiff repeats and realleges the Paragraphs above as if fully set forth herein, except as to any allegation that Starbucks's conduct was reckless.

76. Starbucks owed Mitchell a duty to properly supervise and train its employees to prevent foreseeable injuries to him.

77. Defendant was negligent in supervising and training its employees.

78. Starbucks's employees should have been supervised and trained on the dangerous condition when using cleaning chemicals, including Urnex, and failed to take adequate steps to prevent injury to Mitchell.

79. This is especially so when Starbucks was on actual notice of other Starbucks employees poisoning customers with Urnex, which caused serious injuries.

80. As detailed above, Starbucks's Upside-Down Cup Method was inherently dangerous.

81. Starbucks breached its duty to properly train and supervise its employees to prevent foreseeable injuries.

82. As a result of the breach of duty, Plaintiff suffered injuries as described above, and has been damaged in far excess of $75,000.00.

83. Plaintiff has suffered and continues to suffer special damages, including but not limited to medical expenses.

## CONCLUSION

**WHEREFORE**, Plaintiff demands judgment as follows:

A. Mitchell's actual damages as proven at trial.

B. Punitive damages as permitted by law.

C. Reasonable attorney's fees and expenses as permitted by law.

D. The costs and disbursements of this Action.

E. Prejudgment interest.

F. Such other and further relief as deemed just and proper by this Court.

## JURY DEMAND

Pursuant to Rule 38 (b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury.

Dated: New York, New York
March 21, 2022

Yours, etc.,
TACOPINA, SEIGEL & DeOREO

By: _____
Joseph Tacopina, Esq.
Chad D. Seigel, Esq.
Matthew G. DeOreo, Esq.
*Attorneys for Plaintiff*
275 Madison Ave., Fl. 35
New York, New York 10016
Tel: (212) 227-8877
Fax: (212) 619-1028